UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                :

DORAN ALLEN,                              :

                      Petitioner,        :

                                 :            20-cv-4600 (LJL)

      -v-                          :

                                 :       OPINION AND ORDER

MICHAEL CAPRA, Superintendent,   :

                                 :

                   Respondent.     :

                                 :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__6/1/2021__

LEWIS J. LIMAN, United States District Judge:

      Petitioner Doran Allen ("Petitioner" or "Allen"), proceeding pro se, brings this petition

for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction and

sentence in New York state court.  Petitioner was convicted by a jury on January 10, 2014 on

charges of first degree manslaughter in violation of N.Y. Penal Law § 125.20.  *See* Dkt. No. 13.

He was sentenced to a term of incarceration of 20 years, plus a five-year period of post-release

supervision.  *Id.*

      Petitioner seeks a writ of habeas corpus on the following grounds: (1) "Mr. Allen was

prejudiced by being forced to defend himself against a jurisdictionally defective murder charge

and is entitled to a new trial" ("Ground One"), Dkt. No. 2 ("Petition") at 2; (2) "[T]he evidence

against the unarmed [Petitioner], the purported getaway driver, failed to support [Petitioner's]

conviction as an accessory, for first degree manslaughter" ("Ground Two"), *id.* at 3;

(3) "[Petitioner]'s trial for murder violated his right to indictment, as the charge was secured

without the judicial authorization required in the circumstances, a fundamental jurisdictional

defect that now compels reversal of his manslaughter conviction, notwithstanding his acquittal of

murder" ("Ground Three"), *id.* at 5; and (4) "Mr. Allen was denied the effective assistance of

Counsel under the New York State Constitution and the U.S. Constitution" ("Ground Four"), *id.* at 8.

For the following reasons, the Petition is denied.

## BACKGROUND

In 2008, Petitioner acted as the getaway driver during a shooting that resulted in the death of one of the victims. *People v. Allen*, 118 N.E.3d 897, 899 (N.Y. 2018). Two other victims survived. *Id.* The shooting was alleged to be in retaliation for an incident two weeks prior, when the deceased victim, Charles Sims, shot Petitioner's acquaintance, known as "Big Bro," in the back. Dkt. No. 13; *see also People v. Allen*, 59 N.Y.S.3d 14, 15 (1st Dep't 2017). On August 4, 2008, Big Bro summoned Petitioner and others to go to a club where Sims was, to "handle it." Dkt. No. 13. Petitioner drove the perpetrators to the club and waited in the car. After the shooting, Petitioner drove the perpetrators away from the club, engaging the police on a high-speed chase across Bronx County, until a police car managed to force the car to stop. *Id.* Shortly thereafter, Petitioner and two others were arrested and indicted. *Allen*, 118 N.E.3d at 899.

The initial indictment charged Petitioner and certain co-defendants, under the theory that they were acting in concert theory with each other, with murder in the second degree, N.Y. Penal Law § 125.25, attempted murder in the second degree, N.Y. Penal Law §§ 110, 125.25, manslaughter in the first degree, N.Y. Penal Law § 125.20, and criminal possession of a weapon in the second degree, N.Y. Penal Law § 265.03. Dkt. No. 13. The grand jury deadlocked, however, on the murder charge against Petitioner. *Allen*, 118 N.E.3d at 899.

The State took no official action with respect to the grand jury's deadlock on the murder charge against Petitioner. *Id.* In 2011, however, the State filed a second indictment against Petitioner and a new co-defendant, which contained a charge for murder in the second degree,

N.Y. Penal Law § 125.25, against Petitioner.  *Id.*  Although the State obtained permission to resubmit the matter to a new grand jury with respect to the co-defendant, it conceded it failed to obtain such permission with respect to Petitioner as required by New York Criminal Procedure Law ("N.Y. C.P.L.") § 190.75(3).[1]  *Id.*

Petitioner moved to dismiss the murder charge contained in the second indictment as obtained in violation of N.Y. C.P.L. § 190.75(3).  *Id.* at 899-900.  The New York Supreme Court denied that motion, holding that although the State was required to obtain permission to resubmit the murder charged to a new grand jury and failed to do so, the error was not "fatal" and did not require dismissal of the murder charge.  *Id.* at 900.  The court also noted that there was no evidence that the State had acted in bad faith.  *Id.*

Petitioner proceeded to trial on both indictments, and he was tried jointly with two co-defendants.  *Id.*  After trial, the jury acquitted Petitioner of the murder charge in the second indictment, convicted Petitioner of the manslaughter charge in the first indictment, and acquitted Petitioner of all other charges in the first indictment.  *Id.*  On January 10, 2014, a judgment was entered in New York Supreme Court sentencing Petitioner to a term of 25 years' imprisonment, plus a five-year period of post-release supervision.  Dkt. No. 13.

On appeal, the Appellate Division, relying primarily on the Court of Appeals' decision in *People v. Mayo*, determined that the "unlawful murder charge 'loomed' over the trial and influenced the verdict" and accordingly, it reversed Petitioner's conviction and remanded for a new trial on the manslaughter charge.  *Allen*, 59 N.Y.S.3d at 15-16 (citing *People v. Mayo*, 397

---

[1] "When a charge has been so dismissed, it may not again be submitted to a grand jury unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury.  If in such case the charge is again dismissed, it may not again be submitted to a grand jury."  N.Y. Crim. P. Law § 190.75(3).

N.E.2d 1166, 1169-70 (N.Y. 1979)).  One justice dissented, concluding that a spillover analysis, rather than *Mayo*, applied and that under a spillover analysis, Petitioner was not entitled to a new trial on the manslaughter charge.  *Id.* at 17-19; *see also Allen*, 118 N.E.3d at 900.  The dissenting justice granted the State leave to appeal.  *Allen*, 118 N.E.3d at 900.

In an opinion issued on December 13, 2018, the Court of Appeals acknowledged that "[t]he People's failure to obtain court permission to resubmit a murder count to a new grand jury after the first grand jury deadlocked on that charge violated Criminal Procedure Law § 190.75(3)" and thus the "Supreme Court erred in denying defendant's pretrial motion to dismiss the murder count in the second indictment on that ground," but it nonetheless held that such error did not require reversal of Petitioner's conviction.  *Id.* at 899.  In the first place, only the murder charge in the second indictment was obtained at the violation of N.Y. C.P.L. § 190.75(3) so that "[a]ll [of] the counts charged against defendant in the first indictment, including the count of manslaughter in the first degree, undisputedly suffered from no such infirmity."  *Id.* at 902.  The Court of Appeals agreed with the dissenting justice that a spillover analysis, rather *Mayo*, should have been applied to "determin[e] whether the presence of the murder count during trial requires that defendant receive a new trial on the 'non-tainted' manslaughter count."  *Id.* at 904.

However, application of the spillover analysis also concluded that Petitioner was "not entitled to a new trial on the manslaughter count" because "all of the evidence admitted to prove defendant's guilt of murder in the second degree was also admissible to prove his guilt of manslaughter in the first degree, and defendant does not contend otherwise. . . .[T]he presence of the tainted murder count here did not result in the admission of any prejudicial evidence that the jury would have been unable to consider if the murder count had been dismissed."  *Id.* at 904.

As a result, "there [was] no reasonable possibility that the presence of the murder count during trial influenced the jury's decision to convict defendant on the manslaughter count in any meaningful way." *Id.* at 905.  The Court of Appeals reversed and remanded the action to the Appellate Division only for a determination of the facts and issues that had been raised, but had not yet been determined, on appeal. *Id.*

On February 14, 2019, on remand, the Appellate Division rejected Petitioner's remaining arguments that he had received ineffective assistance of counsel first, when his counsel failed to request an instruction that if the jury convicted his codefendant of intentional murder, it should also acquit Petitioner of manslaughter, and second, when his counsel failed to object to the verdict as repugnant. *People v. Allen*, 94 N.Y.S.3d 50, 52 (1st Dep't 2019).  The Court of Appeals denied Petitioner's request to appeal on May 28, 2019. *People v. Allen*, 126 N.E.3d 152 (N.Y. 2019).

On June 16, 2020, Petitioner filed the habeas corpus petition in the instant action.

## LEGAL STANDARD

The Court's review of Petitioner's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, which provides for a deferential review of a state court's ruling. *See Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009).

Before a district court can proceed to the merits of a petitioner's claims, it must determine that the petition complies with the AEDPA's numerous procedural constraints.  The first of these requirements is exhaustion.  Generally, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A).  "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available

procedure, the question presented." *Id.* § 2254(c).  The exhaustion requirement exists to ensure that a state prisoner has given the State "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted).

As to the merits of a petitioner's claims, the AEDPA in relevant part reads:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[W]hen a state court rejects a petitioner's claim as either unpreserved or without merit, the conclusive presumption is that the adjudication rested on the merits." *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).  The Supreme Court has "interpreted § 2254(d)(1) as giving independent meanings to the 'contrary to' and 'unreasonable application' clauses." *Overton v. Newton*, 295 F.3d 270, 275 (2d Cir. 2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404 (2000)). "A state court decision is 'contrary to' clearly established federal law as determined by the Supreme Court 'if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Id.* (citing *Williams*, 529 U.S. at 413). "A state court decision involves an 'unreasonable application' of clearly established federal law as determined by the Supreme Court when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the

facts of the prisoner's case.'"  *Jones v. West*, 555 F.3d 90, 96 (2d Cir. 2009) (quoting *Williams*,

529 U.S. at 413).  "[I]t is well-established in this Circuit that the 'objectively unreasonable'

standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness

beyond error in order to obtain *habeas* relief."  *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir.

2007).  Indeed, § 2254(d)(1) "would be undermined if habeas courts introduced rules not clearly

established under the guise of extensions to existing law."  *Yarborough v. Alvarado*, 541 U.S.

652, 666 (2004).  Finally, when a court conducts its review, "[a] state court's findings of fact are

'presumed to be correct' unless rebutted 'by clear and convincing evidence.'"  *Drake*, 553 F.3d

at 239 (quoting 28 U.S.C. § 2254(e)(1)).

## DISCUSSION

## I.      Petitioner meets the procedural requirements to petition for habeas corpus

Before granting habeas relief, the Court must confirm that "the applicant has exhausted

the remedies available in the courts of the State."  28 U.S.C. § 2254(b).  In particular, the

AEDPA states: "An applicant shall not be deemed to have exhausted the remedies available in

the courts of the State . . . if he has the right under the law of the State to raise, by any available

procedure, the question presented."  *Id.* § 2254(c).  The parties do not dispute that Petitioner has

exhausted all such remedies.

The first, second, and third grounds were rejected by the Court of Appeals in its

December 13, 2018 decision.  *See Allen*, 118 N.E.3d at 905.  The fourth ground was rejected by

the Appellate Division after remand by the Court of Appeals to decide outstanding issues.  *See*

*Allen*, 94 N.Y.S.3d at 52.  After this last ruling, Petitioner applied to the Court of Appeals for

leave to appeal but his application was denied.  *See Allen*, 126 N.E.3d at 152.  Because Petitioner

raised all of the "question[s] presented" before this Court in state court proceedings and has

attempted to appeal unfavorable rulings to him, he has exhausted the legal remedies available to him in the state courts.

## II.   Petitioner's claims do not meet the merits requirements for habeas relief

Having determined Petitioner satisfied the AEDPA's exhaustion requirement, the Court turns to the merits of his claims.

### A.   While unlawful under state procedural law, the re-presentation of the murder charge is not cognizable under habeas review

Because Grounds One and Three, related to the impact of the murder charge obtained in violation of N.Y. C.P.L. § 190.75(3), were adjudicated on the merits in state court proceedings, the AEDPA instructs that habeas relief shall not be granted with respect to those grounds unless adjudication of those grounds:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Therefore, this Court considers the issue as determined by Supreme Court precedent.

The Double Jeopardy Clause of the U.S. Constitution states: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. The Supreme Court has described the clause as "afford[ing] a defendant three basic protections: It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *Ohio v. Johnson*, 467 U.S. 493, 497-98 (1984) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)); *accord United States v. Wilson*, 420 U.S. 332, 342-43 (1975).  The purpose behind these "protections stem[s] from the underlying premise that a

defendant should not be twice tried or punished for the same offense." *Schiro v. Farley*, 510 U.S. 222, 229 (1994). The clause thus "operates as a bar against repeated attempts to convict, with consequent subjection of the defendant to embarrassment, expense, anxiety, and insecurity, and the possibility that he may be found guilty even though innocent" so that "[w]hen a defendant has been acquitted, the Clause guarantees that the State shall not be permitted to make repeated attempts to convict him." *Id.* at 229-30 (internal citations and quotation marks omitted); *see also Johnson*, 467 U.S. at 498 (describing the bar to retrial following acquittal or conviction).

The Supreme Court has clarified, however, that the "Double Jeopardy Clause is not a complete barrier to an appeal by the prosecution in a criminal case." *United States v. DiFrancesco*, 449 U.S. 117, 132 (1980). "[Where] a Government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended." *Id.* (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 569-70 (1977)). But "[w]here the Clause does apply, 'its sweep is absolute.'" *Id.* at 131 (quoting *Burks v. United States*, 437 U.S. 1, 11 n.6 (1978)).

Therefore, the question is whether the re-presentation of the murder charge to a second grand jury (in violation of state procedural law N.Y. C.P.L. § 190.75(3) after the first grand jury deadlocked) violated the Double Jeopardy Clause.

Petitioner argues that under *People v. Credle*, 958 N.E.2d 556 (N.Y. 2011), the unlawful murder charge should have been dismissed because the first grand jury deadlocked on it. *See* Petition at 4. Regardless of whether this argument is true under state law, this Court may not reach that question, because on habeas review, this Court only reviews for violations of "clearly established Federal law." 28 U.S.C. § 2254(d)(1).

Under this Circuit's precedents, "[c]laims of deficiencies in state grand jury proceedings are not cognizable in a habeas corpus proceeding in federal court." *Davis v. Mantello*, 42 F. App'x 488, 490-91 (2d Cir. 2002) (citing *Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989)); *Mirrer v. Smyley*, 703 F. Supp. 10, 11-12 (S.D.N.Y. 1989), *aff'd*, 876 F.2d 890 (2d Cir. 1989).  This rule has been applied and reaffirmed in numerous habeas proceedings, eliminating any doubt that there is no federal right at issue here.  *See Proctor v. McCarthy*, 2020 WL 1149660, at *12 (S.D.N.Y. Mar. 10, 2020) (citing *Davis*, 42 F. App'x at 490-91 for the proposition that claims based on such defects are not cognizable in a federal habea*s* petition); *Vasquez v. New York*, 2020 WL 1271363, at *3 (S.D.N.Y. Mar. 16, 2020) (same); *Lineberger v. Ercole*, 2007 WL 4245911, at *4 (S.D.N.Y. Nov. 30, 2007) (rejecting challenge to violation of N.Y. C.P.L. § 190.75 as not reviewable); *Staley v. Greiner*, 2003 WL 470568, at *11 (S.D.N.Y. Feb. 6, 2003) ("The right to have state charges presented to a grand jury is a state-created right, not a federal right."); *Batista v. Walker*, 1995 WL 453299, at *2 (S.D.N.Y. July 31, 1995) (declaring that a claim that an indictment was "wrongfully resubmitted to the grand jury . . . does not rise to the level of a constitutional violation that is cognizable in a federal habeas proceeding").

This rule stems from the fact that "[a] fundamental aspect of habeas corpus review is that only violations of federal law are cognizable in a federal habeas corpus proceeding; a violation of state law provides no basis for habeas relief." *Paul v. Ercole*, 2010 WL 2899645, at *5 (S.D.N.Y. June 10, 2010) (citing 28 U.S.C. § 2254(a)).  Also, "a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002) (citing 28 U.S.C. § 2254); *see also Cusamano v. Donelli*, 2010 WL 2653653, at *3 (S.D.N.Y. July 1, 2010) (reaffirming that errors in state grand jury proceedings are not cognizable on

federal *habeas* review, because "[s]ince there is no federal constitutional right to indictment by a grand jury in a state prosecution, a misapplication of state law in a grand jury proceeding does not violate the Constitution, laws, or treaties of the United States") (citation and quotation marks omitted); *May v. Warden*, 2010 WL 1904327, at *3 (S.D.N.Y. May 10, 2010) ("There is no federal constitutional right to a grand jury in a state criminal prosecution, and thus a claim of deficiency in the proceeding is 'not cognizable in a habeas corpus proceeding.'") (internal citations omitted).

In his analysis supporting Ground One, Petitioner did not raise any federal right that was violated by the re-presentation issue. *See* Petition at 2-3. For Ground Three, the bulk of Petitioner's analysis focuses on the state courts' application of *Credle* and *Mayo*. *See id.* at 5-8. But that issue was adjudicated in the state courts and this Circuit's precedents are clear that such issues of state law are not to be re-examined in a federal habeas proceeding. *See Ponnapula*, 297 F.3d at 182 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (quoting *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

The Petition invokes only federal rights allegedly implicated by the re-presentation issue in three brief paragraphs under Ground Three. *See* Petition at 7-8. Petitioner argues:

> [1] The murder charge against defendant lacked jurisdictional legitimacy, which violated his constitutional right to be tried for a felony only upon a valid indictment, and thereby his federal and state due-process liberty-interest right in trial by indictment.
> . . . .
> [2] Here, while defendants trial for murder did not violate double jeopardy, it nonetheless "impugned the very integrity of the criminal proceeding." That the jury acquitted of it matters not. Rather than continuing to debate defendant's

innocence, the jury may have concluded that it had grappled with the proof by absolving him of the most serious charge.

. . . .

[3] Mr. Allen's lesser conviction for manslaughter did not cure the myriad Constitutional harms he suffered.  [E]xactly as the Appellate Division held, the proper remedy is a new trial with the murder charge now barred as a matter of Federal and State double-jeopardy.

Petition at 7-8.  But all of these arguments face the same problem: they stem from a procedural complaint—that it was a procedural error to re-present the murder charge to the second grand jury.  This Circuit's precedents are clear and have been reaffirmed by this Court: procedural errors in state grand jury hearings are not cognizable under habeas review.  Therefore, Petitioner's Grounds One and Three for habeas review, that is, the Grounds related to the re-presentation issue, are denied.

### B.   The evidence against Petitioner supported his conviction as an accessory to first degree manslaughter

Petitioner's Ground Two for habeas relief is that the evidence against him failed to support his conviction of first degree manslaughter.  Petition at 3-5.  He argues that "[t]he evidence against [Petitioner] did not establish his intent to cause the deceased serious physical injury, the mental-culpability required for first-degree manslaughter."  *Id.* at 4.  But the question of whether Petitioner's conduct met the elements of first degree manslaughter was adjudicated by a jury in state court, and, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'"  *Drake*, 553 F.3d at 239 (quoting 28 U.S.C. § 2254(e)(1)).  The Second Circuit has emphasized that "[t]his is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Santone v. Fischer*, 689 F.3d 138, 147 (2d Cir. 2012).

Further, in a habeas challenge to "the evidentiary sufficiency of a state criminal conviction, we review the evidence in the light most favorable to the State and the applicant is

entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial." *Ponnapula*, 297 F.3d at 179 (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).  "Petitioner bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Id.* (internal quotations and citation omitted).

    Petitioner's insufficiency argument falls short of meeting this difficult burden.  At most, he argues that "evidence that [Petitioner] had foreknowledge of any plan to kill or seriously injure [the victim], let alone personally possessed the intent to cause such injury, was lacking." Petition at 5.  To support this, Petitioner cites a co-defendant's testimony that "there was really no plan to go murder [the victim]," and that his post-shooting behavior reinforced his lack of culpability for the shooting.  *Id.*  These two points do not pass for "clear and convincing evidence" that the state court's determinations were incorrect.  Nor would they satisfy *Jackson* even in the absence of the state-court finding.  *See Jackson*, 443 U.S. at 318 ("[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be . . . to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt."

    The Appellate Division, on Petitioner's first appeal, determined that:

> The evidence, viewed in totality, supports the conclusion that both defendants intentionally aided the commission of the homicide and shared a community of purpose with the persons who actually shot the victim.  In addition to evidence about events leading up to the incident, there was testimony that immediately before the homicide, there was a conversation among the participants in which one of the gunmen specifically referred to a plan to "hit" or "kill" the victim and other persons who might be accompanying him.  The evidence also demonstrated that . . . Allen intentionally participated by acting as a driver and by pointing out the victim.

*Allen*, 59 N.Y.S.3d at 15 (citations omitted).  After remand from the Court of Appeals, the Appellate Division re-affirmed its prior holding that the "evidence supported the conclusion that

13

[Petitioner] intentionally aided the commission of the homicide and shared a community of purpose with the gunman, and that [Petitioner] intentionally participated by acting as a driver and by pointing out the victim." *Allen*, 94 N.Y.S.3d at 51.

These state court decisions should be "given the benefit of the doubt" and the evidence must be viewed "in the light most favorable to the prosecution." Accordingly, this Court denies Petitioner's claim that his conviction was based on insufficient evidence.

### C.      Petitioner was not denied effective assistance of counsel

Petitioner's final ground for habeas relief, Ground Four, is that he was denied effective assistance of legal counsel. *See* Petition at 8-9. Petitioner argues that had his "trial attorney objected to the repugnant verdict, [his] manslaughter conviction would have been dismissed" because "it was logically inconsistent for the jury, as charged, to convict [Petitioner] of acting in concert in connection with a crime the principal actor—according to the jury's own verdict . . . NEVER COMMITTED." Petition at 9. This argument fails, for the reasons below.

An ineffective counsel claim in the habeas context receives two layers of deference. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so") (internal citations omitted). Section 2254 creates the first layer of deference by permitting a federal court to grant a state prisoner habeas relief only if the state court's rejection of his federal law claim was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Boyland v. Artus*, 734 F. App'x 18, 19-20 (2d Cir. 2018) (quoting 28 U.S.C. § 2254(d)(1)-(2)). The second layer "inheres in the well-established two-prong standard of review for such Sixth Amendment claims, which requires petitioner to show both (1) that

counsel's representation was objectively deficient, and (2) ensuing prejudice." *Id.* at 20 (citing *Strickland v. Washington*, 466 U.S. 668, 688-93 (1984)).

At this first layer, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* At the second, they ask not whether counsel's error had "some conceivable effect on the outcome of the proceeding," but whether it "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 20 (quoting *Strickland*, 466 U.S. at 686, 693). Against "[t]he benchmark for judging any claim of ineffectiveness," i.e., "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," Petitioner fails to meet these highly deferential standards. *Strickland*, 466 U.S. at 686.

Petitioner's ineffectiveness argument turns on the verdict being "repugnant" because it was "logically inconsistent." *See* Petition at 8. Petitioner claims that it was logically inconsistent for the jury to convict him of "acting in concert in connection with a crime the principal actor—according to the jury's own verdict . . . [never committed]." *Id.* He argues this was not "an arcane point of law or one that would have been difficult for trial counsel to recognize: rather the prohibition against repugnant verdicts is one of the central tents of New York Criminal Jurisprudence." *Id.*

The verdict in Petitioner's case, however, was not repugnant. Under New York law, "a verdict is repugnant only if it is legally impossible—under all conceivable circumstances—for the jury to have convicted the defendant on one count but not the other," and, "if there is a possible theory under which a split verdict could be legally permissible, it cannot be repugnant, regardless of whether that theory has evidentiary support in a particular case." *People v. DeLee*,

26 N.E.3d 210, 213 (N.Y. 2014) (citations omitted); *see also People v. Muhammad*, 959 N.E.2d 463, 471 (N.Y. 2011) ("[T]he question is not whether there was proof . . . it is whether a theoretical defendant charged with the same offenses (as framed by the actual jury instruction) could have been guilty of one but not the other.").

There is no such inconsistency here. It was permissible for Petitioner and his co-defendants to be convicted of different degrees of homicide, even in cases of accessorial liability. *See, e.g.*, *People v. Dedaj*, 756 N.Y.S.2d 560 (1st Dep't 2003) ("The fact that defendant and the codefendant were convicted of different degrees of homicide does not undermine the inference of accessorial liability."). Thus, although one of his co-defendants was not convicted of manslaughter, that does not create repugnancy as Petitioner argues. *See* Petition at 8. That co-defendant, Devin Alexander, was convicted of more serious offenses, including second degree murder in violation of N.Y. Penal Law § 125.25[1], a different degree of homicide that does not undermine the inference of accessorial liability. *See Alexander v. Royce*, 2021 WL 1192022, at *1 (S.D.N.Y. Mar. 30, 2021).

Indeed, on remand, the Appellate Division reached the same holding on Petitioner's insufficiency claim in this case:

> Counsel was not ineffective for failing to request an instruction that if the jury convicted codefendant Alexander of intentional murder, it should acquit [Petitioner] of manslaughter. The court properly instructed the jury on the applicable principles of acting in concert liability, including that the jury must find beyond a reasonable doubt that the particular defendant . . . intentionally aided that person or persons to engage in that conduct and that the particular defendant did so with the state of mind required for the commission of that offense. The fact that a defendant and codefendant are convicted of different degrees of homicide does not undermine the inference of accessorial liability. For example, the jury may have concluded that Alexander intended to kill the victim, but [Petitioner] intended only

to seriously physically injure him based on what he knew prior to the shooting, and acted in concert with the cooperating witness.

*Allen*, 94 N.Y.S.3d at 52 (internal citations and quotation marks omitted).  "For the same reason," the Appellate Division held that "counsel was not ineffective for failing to object to the verdict as repugnant."  *Id.*

Petitioner has failed to substantiate an insufficiency of counsel claim here.  For these reasons, Petitioner's Ground Four for habeas relief is denied.

## CONCLUSION

The petition for a writ of habeas corpus is DENIED.

The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Petitioner and to close the case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: June 1, 2021
       New York, New York                    _____
                                             LEWIS J. LIMAN
                                             United States District Judge